UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

Alba Amaya,

                    Plaintiff,           Civil Action No.

-against-                            **COMPLAINT**
                                                                            *Jury Trial Demanded*
The Manhattan Institute, Inc. and
Edward D. Schwartz,

                    Defendants.
_____x

        Plaintiff Alba Amaya, by her attorneys Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, NY 10006 alleges upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

        1.     Plaintiff Alba Amaya ("Plaintiff") began working as a custodian for Defendant The Manhattan Institute, Inc. ("Defendant Manhattan Institute") and Defendant Edward D. Schwartz ("Defendant Schwartz") (hereinafter collectively referred to as "Defendants") in August 2010. Over the next several years, Plaintiff experienced relentless and repeated sex discrimination and sexual harassment at the hands of her direct manager, Reuben Martinez ("Manager Martinez"). Manager Martinez leered at Plaintiff and made explicit comments about her body. He propositioned her for sex, and when she objected to him he called her a "prostitute" and "worthless." Manager Martinez grabbed Plaintiff's buttocks and breasts, pressed his penis against her buttocks, and told her he would fire her if she did not send him naked photos. Manager Martinez further gave Plaintiff solitary work assignments in far corners of Defendants' building in order to assault and harass her further.

        2.     After Plaintiff stated firmly and plainly that she would not engage in a sexual or romantic relationship with him, Manager Martinez retaliated against her by assigning her more physically demanding and solitary tasks, prohibiting her from taking vacation days, sick days, and leave to care for her disabled son, reducing Plaintiff's hours, refusing to pay her overtime hours, and denying her the bonus that her co-

1

workers received. Manager Martinez also prohibited Plaintiff from taking leave under the Family Medical Leave Act (FMLA) and retaliated against her for doing so.

3. Thereafter, in the face of overwhelming evidence of his illegal sexual harassment, Manager Martinez was fired. Soon however, he was shockingly re-hired-and allowed to manage Plaintiff once again. Manager Martinez once again began to subject Plaintiff to sexual harassment and also to angrily retaliate against her for rejecting his advances and for previously reporting him and, being part of the reason that he had been terminated. Defendant knowingly placed Manager Martinez in a position to sexually harass and retaliate against the female employees who had reported him.

4. Knowing that Defendants did not care about the abuse she endured, Plaintiff decided that she had no choice but to hire counsel. Plaintiff ultimately retained the undersigned attorney, whom sent Defendants a "representation letter" informing Defendants that Plaintiff was represented by counsel in relation to her discrimination claims. Immediately thereafter, Defendants terminated Plaintiff.

5. Thus, Plaintiff brings this discrimination and retaliation action against Defendants to enforce her rights under Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, based on Plaintiff's claims under Title VII. This Court has supplemental jurisdiction over Plaintiff's State and City law claims pursuant to 28 U.S.C. § 1367. In addition, venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## THE PARTIES

### Plaintiff

7. Plaintiff is a female Legal Permanent Resident of the United States who currently resides in Queens, New York.

8. Plaintiff is a woman and therefore a member of a protected class within the meaning of all relevant Federal, State and Local laws, including but not limited to Title VII, the NYSHRL and the NYCHRL.

2

9. Plaintiff is and was, at all times relevant herein, Defendant Manhattan Institute and Defendant Schwartz's "employee" within the meaning of all relevant Federal, State and Local laws, including but not limited to Title VII, the NYSHRL and the NYCHRL.

### Defendants

10. Upon information and belief, at all times herein, Defendant Manhattan Institute is a municipal corporation incorporated under the laws of the State of New York.

11. Upon information and belief, Defendant Manhattan Institute's Operations Headquarters are located at 45 West 34th Street, New York, NY 10001 and its Principle Executive Offices are located at 112 West 31st Street, 2nd Floor, New York, NY 10001.

12. Upon information and belief, Defendant Schwartz is Defendant Manhattan Institute's Chief Executive Officer (CEO) who actively participates and continues to participate in the day-to-day operations of Defendant Manhattan Institute.

13. Upon information and belief, Defendant Schwartz is employed at Defendant Manhattan Institute's Operation Headquarters and their Principle Executive Offices.

14. Defendants are and were, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State and local laws, including but not limited to Title VII, the NYSHRL and NYCHRL.

15. Upon information and belief Defendant Manhattan Institute has more than 15 employees.

### PROCEDURAL BACKGROUND

16. Plaintiff has duly satisfied all administrative prerequisites to commencing this action, as described therein.

17. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 28, 2018. The EEOC issued Plaintiff a Right to Sue on December 12, 2018. Plaintiff is filing this action within ninety (90) days of her receipt of her Right to Sue.

## OPERATIVE FACTS

### Plaintiff is Hired as a Custodian at Defendants

18. Plaintiff arrived in the United States from Colombia, South America in or about 2005 as a Legal Permanent Resident and has lived in the United States as a legal immigrant since that date. Plaintiff worked very hard to provide for her family and to do her part to contribute to her new country, the United States.

19. In or about August 2010, Plaintiff began working as a Custodian for Defendants.

20. Plaintiff was hardworking and punctual and was well known for being a good co-worker. Plaintiff rarely missed a day of work unless it was absolutely necessary, and she made sure to get any and all work done, and she often worked many extra hours. Plaintiff enjoyed a pleasant relationship with her colleagues and appreciated the Monday through Thursday schedule that allowed her to work and take care of her family and home life.

### Plaintiff's Supervisor Demands Sex From Her and Subjects her to a Hostile Work Environment

21. Plaintiff reported to a manager named Reuben Martinez (hereinafter "Manager Martinez"). Shortly after he began working at Defendants, Manager Martinez began severely sexually harassing Plaintiff.

22. Manager Martinez sought Plaintiff out throughout the workday and showed up in her work areas for no reason other than to look at her and make comments about her body. He incessantly commented on her appearance, leered at her body, and interrupted her work to tell her that she was "hot" or "sexy."

23. When Plaintiff ignored his behavior, he became furious with her, and repeatedly called her a prostitute and told her that she was "worthless as a woman." He also said that "she was intelligent, so she should act like a whore and take the easy money he offered her." After his outbursts, he would again begin trying to pursue her.

24. Manager Martinez also repeatedly cornered Plaintiff and alternatively insisted that she go on dates with him and that she have sex with him.

4

25. Manager Martinez regularly demanded that she accompany him to a hotel room during the day or after work hours to have sex with him.

26. He repeatedly told her that he "knew she wanted it," that he could "satisfy her," and that she should have sex with him because he was "an excellent lover" and had a "big penis."

27. Manager Martinez's harassment made Plaintiff deeply embarrassed and extremely uncomfortable, but she was scared to object too strongly to his behavior because she needed her job. Plaintiff feared that Manager Martinez would fire her if she rejected his advances too strongly.

28. Plaintiff attempted to politely object to Manager Martinez by saying that she was focusing on being a mother and not dating anyone at all. She hoped that Manager Martinez would think that her lack of interest was not "personal" and that he would stop harassing her without becoming angry and belligerent.

29. Shockingly, Manager Martinez refused to take no for an answer, and his harassment continued. He warned Plaintiff that if she told anyone what he said to her "no one would believe her" and that she would lose her job because he was "important to the company" and she was a "worthless woman."

30. Manager Martinez also ordered Plaintiff to "smile" and "act normal, like nothing is going on."

### Manager Martinez Prohibits Plaintiff from Taking Vacation in Retaliation for Her Objections to his Sexual Harassment

31. Plaintiff's objections to Manager Martinez's sexual harassment infuriated Manager Martinez. When Plaintiff asked Manager Martinez if she could take her vacation days, he told her she could not take a vacation.

32. As a result, Plaintiff could not go on vacation.

33. From 2011 to 2017, when Plaintiff was terminated from Defendant Manhattan Institute, Plaintiff was allowed to take a one-week vacation just one time.

34. Upon information and belief, Defendants permitted similarly situated employees who did not complain about or object to sexual harassment were allowed to take vacation days.

### Manager Martinez Tries to Change Plaintiff's Schedule to Increase his Time to Sexually Harass Her

35. Plaintiff was flabbergasted when Manager Martinez lewdly asked her to work an extra day a week, on Fridays, so that he could "see her more." He even offered to pay Plaintiff "300 pesos" to work, a tiny sum, which made Plaintiff feel humiliated and used as a woman.

36. Plaintiff was alarmed when she realized that Manager Martinez, her supervisor, would stop at nothing to try to see her so that he could again insist that she date him, or have sex with him.

37. Plaintiff did not respond to his request to "see her more," but just nervously said that her schedule and her family obligations would not allow her to work Fridays. Plaintiff still, however, had to fight back his advances from Monday through Thursday.

### Manager Martinez Physically Assaults Plaintiff Multiple Times

38. Because Plaintiff continued to decline Manager Martinez's sexual advances and ignore his sexual comments, his harassment and mistreatment escalated even further.

39. Manager Martinez tried to physically touch her continuously, and lecherously reached for and grabbed her buttocks, hips, and legs. He rubbed his penis against her buttocks. Plaintiff, clearly distraught by each assault, ran away from him each time, but he followed her. Plaintiff took to hiding in the bathroom, but Manager Martinez stood outside the bathroom until she came out, and then screamed at her to come out of the bathroom, and for refusing to allow him to touch her.

40. On several occasions, Manager Martinez threatened to fire her if she did not allow him to touch her sexually, and on other occasions, he warned her that she "had to" let him touch her.

41. At one point, Manager Martinez ordered Plaintiff to accompany him to Home Depot for work. Terrified of being fired for insubordination if she refused, Plaintiff had no choice but to walk with him to Home Depot. As soon as they started walking, Manager Martinez leaned over and touched her body and tried to kiss her, and Plaintiff quickly got out of the way to avoid his sexual and physical assault. She remained silent during their trip to the store and the trip back to Defendants, and then ran inside to get away from him and return to work.

### Manager Martinez Purposely Harasses Plaintiff in Work Areas Where Video Cameras Do Not Film Them

42. Manager Martinez was responsible for assigning employees to various areas in the building to clean.

43. Tellingly, Manager Martinez always assigned Plaintiff to areas in the building where video cameras could not detect his or her presence. For example, Manager Martinez routinely sent her to clean classrooms that did not have cameras.

44. Upon information and belief, Manager Martinez ordered Plaintiff to work in camera-free areas so that he could be free to assault her.

45. Manager Martinez repeatedly appeared in the camera-free areas where he assigned Plaintiff and made sexual comments, insisted that she have sex with him, and tried to touch her body.

46. Manager Martinez told Plaintiff that he would fire her if she didn't allow him to do so. He reminded her that she needed the job in order to support her family.

47. Plaintiff could not afford to lose her job.

48. When Plaintiff was in these areas, she walked on eggshells, terrified at the thought that Manager Martinez might appear at any moment. When Manager Martinez did come, she was terrified of being alone with him in an area where no one could rescue her.

49. Plaintiff feared for the worst, that Manager Martinez would flat out rape her. Being trapped in these areas alone with Manager Martinez made her suffer severe anxiety and terror.

### Manager Martinez Intimidates Plaintiff by Asking Her To Eat Lunch With Him Outside the Office

50. Throughout her time at Defendants, Manager Martinez repeatedly demanded that Plaintiff have lunch with him outside of the building.

51. This was a highly unusual request and it made Plaintiff very fearful that he would use the meeting as an opportunity to further sexually harass her. She was scared to be alone with him, due to his highly aggressive behavior. However, Plaintiff was also afraid to disobey him, so she reluctantly went to lunch with him in a park nearby.

7

52. During these lunches, Manager Martinez insistently demanded massages and sexual favors from her.

53. Though terrified of losing her job, Plaintiff refused his advances as politely as she could by telling him that she was not interested in having a relationship with him or anyone else.

54. Upon information and belief, Manager Martinez asked Plaintiff to speak to him outside of the office in the park so that there no witnesses to what he had to say to her.

### Manager Martinez Promises that He Would Stop Pursuing Her If She Sends him Sexual Photos of Herself

55. Despite her objections, Manager Martinez continued to harass Plaintiff. He was becoming frustrated and angry by her refusal to engage with him.

56. Manager Martinez started calling Plaintiff and speaking to her lewdly on the phone and sent her obscene text messages at work.

57. One day he gruffly announced that if she wasn't going to date him, the "least she could do" was send him sexual photos of herself and her private parts. Panicked, Plaintiff had no idea how to respond, and said that she didn't have those types of pictures.

58. For days, Manager Martinez demanded that she send private photos, and she was terrified that she would lose her job over her refusal. His pressure for her to send photos became so intense that she felt she had no choice but to send him a full-length picture of her, but of course only with all of her clothes on.

59. Even this was not good enough. He waived his cell-phone in her face and said "If you don't send me naked pictures of your body, I will fire you." Plaintiff tried to ignore him, but he would not listen.

### Manager Martinez's Ceaseless Harassment Takes a Toll on Plaintiff

60. Throughout her working life, Plaintiff had been a confident and hard-working employee, eagerly approaching each task with diligence and care.

61. Manager Martinez's sexual harassment, however, eroded her self-confidence and made her feel worthless.

62. Plaintiff suffered extreme anxiety and depression at work and at home. She cried constantly

8

in front of her co-workers and her family, she gained weight, and could not sleep.

### Manager Martinez Becomes Even More Aggressive Towards Plaintiff

63. Plaintiff was hopeful that the photo she sent would placate Manager Martinez, but he only became more aggressive with Plaintiff. He continued to ask her to date him and to have sex with him, continued to grab her body and regularly pressed his face up against hers and leered at her.

64. In response to the aggressiveness, Plaintiff was forced to become more adamant about not being sexually involved with him, and about objecting to his sexual harassment in general. She decided that she had to confront him and tell him that she would not have a relationship with him and begged him to stop. "I am a mother, I am not looking for a relationship with anyone, and I wanted to simply have a working relationship, nothing more." She was appalled and frightened by the way she was treated and had no idea how to stop the behavior and keep her job.

### Manager Martinez Retaliates Against Plaintiff by Forcing Her to Do Disproportionately More Work and Insulting Her

65. After Plaintiff's firm objection to Manager Martinez's sexual harassment, he became extremely angry with Plaintiff and began to retaliate against her.

66. Manager Martinez made sure to give Plaintiff more work than her other co-workers and forced physically demanding work on her and her alone. This entailed carrying mattresses and other heavy objects with no assistance from her co-workers, and many other arduous tasks. He purposely assigned Plaintiff an overwhelming amount of work that was impossible for her to perform alone.

67. Manager Martinez also sent Plaintiff to get lunch and coffee for himself and the other management staff, as if she was their servant.

68. Manager Martinez began referring to Plaintiff as "a piece of shit."

69. Plaintiff was horrified, humiliated, and scared for her physical safety as well as the safety of her job.

### Manager Martinez Refuses To Allow Plaintiff Time Off to Take Care of Her Disabled Son

70. In September 2013, Plaintiff's son's doctor diagnosed her son with the disability of Attention Deficit Disorder (ADD). The doctor told Plaintiff that she needed to bring her son to the doctor

9

for treatment once a month.

71.     The first month that she needed to take her son to the doctor, in or about October 2013, Plaintiff told Manager Martinez that her son had ADD and she needed to go to the doctor. Manager Martinez screamed at her that she could not take the day off, but Plaintiff took the day off anyway, because her son's health was very important to her.

72.     Upon her return, Manager Martinez screamed at her yet again, and punished her by making her to do more difficult work, all alone in the office. He told her if she ever took another day off he would fire her.

73.     Plaintiff could not lose her job, and never took a day off to bring her son to the doctor again.

74.     Upon information and belief, Defendants permitted similarly situated employees to take days off pursuant to the Family and Medical Leave Act (the FMLA), and Manager Martinez refused to allow Plaintiff to do so in retaliation for her objections to his sexual harassment.

### Manager Martinez Denies Plaintiff Her Christmas Bonus

75.     In or about December 2013, Plaintiff was shocked to learn from her co-workers that Manager Martinez's had given all of her colleagues a Christmas bonus except for her. When she tried to talk to Manager Martinez about this, he said that "she didn't deserve it."

76.     Because it was clear that Manager Martinez had purposely denied her, and no one else, a Christmas bonus, Plaintiff went to his supervisor "Kenny" to tell him that Manager Martinez must have made some kind of mistake. She reminded him that every other employee had received a Christmas bonus but her.

77.     Kenny responded that it was up to Manager Martinez and there was nothing he could do.

### Manager Martinez Has a History of Harassing Female Employees

78.     Plaintiff shared her fear and frustration about the sexual harassment with her female co-workers.

79.     Plaintiff was shocked when her female co-workers confided in her that she was not his only victim, and that "everyone knew about" Manager Martinez's sexual harassment of female employees for

10

many years.

80. Upon information and belief, Defendants' Management knew about Manager Martinez's egregious sexual harassment of female employees at Defendants and failed to reprimand him or terminate him. Instead Defendants' Management continued to send unknowing female employees to be supervised by Manager Martinez when they knew or should have known that doing so would subject the women to blatant sexual harassment.

### Manager Martinez is Terminated for Harassing an Employee

81. In or about March 2015, Plaintiff learned from her co-workers that Manager Martinez sent sexual pictures to one of Plaintiff's co-workers, "Hailey," and had shown his genitals to her during work hours.

82. Plaintiff could not believe that another female co-worker also experienced Manager Martinez's severe sexual harassment.

83. Plaintiff's co-workers also told her that other women came forward to the Management and complained of sexual harassment by Manager Martinez, and Defendants were forced to settle sexual harassment claims with them for monetary sums.

84. Plaintiff worked up the courage to tell Kenny that she, too, had experienced severe sexual harassment at the hands of Manager Martinez. Plaintiff told him everything that occurred, including all of the incidents of harassment throughout the years. Kenny listened and did not respond.

85. Much to Plaintiff's relief, Manager Martinez was eventually terminated after the many allegations of sexual harassment and abuse against him. Plaintiff was relieved that Manager Martinez would finally be out of her life, and that she could finally work in peace.

### Defendants Shockingly Rehire Manager Martinez

86. Much to the shock and dismay of Plaintiff, Manager Martinez was rehired at Defendants a year after he was terminated, in or around February or March 2016, without warning from Defendants.

87. In addition to her fear that Manager Martinez would again begin sexually harassing and assaulting her, Plaintiff knew that Manager Martinez knew that she had reported him, thereby "causing" his termination and feared that he would be more hateful and abusive to her than ever. She also feared that

11

other men at Defendants would realize that they too could get away with sexually harassing female employees without repercussions, since Defendants clearly had no issue allowing a known, abusive sexual harasser to have authority over female employees.

### Manager Martinez Retaliates Against Plaintiff and Other Female Employees by Threatening Their Jobs

88. Once again, Manager Martinez was given authority over Plaintiff and other women, who were required to report to him.

89. Upon regaining his position, Manager Martinez acted even more outrageous and abusive to all of the female staff, and clearly blamed certain employees for the fact that he had been terminated from Defendant for the past year. He furiously told Plaintiff and her female co-workers, "I am your boss, you must listen to me. If you don't do exactly what I say, I will fire you." Manager Martinez regularly threatened to fire Plaintiff.

90. Upon information and belief, Manager Martinez was furious at all of the women who had "gotten him" in trouble, including Plaintiff.

91. Upon information and belief, once Manager Martinez sexually harassed Defendants' female employees and yet was re-hired, he exhibited more hatred and resentment towards, and more power and control over, female employees.

92. Upon information and belief, Defendants knew of Manager Martinez's behavior towards all female employees, and not only failed to act, but subjected all of their female employees to future harassment and a hostile work environment by rehiring Manager Martinez.

### Manager Martinez Sexually Harasses Plaintiff Yet Again

93. Manager Martinez sexually harassed Plaintiff yet again after he was re-hired.

94. Manager Martinez constantly slowly looked Plaintiff up and down, while paying special attention to her private areas. He regularly made comments about her appearance and her various body parts and gave her looks that indicated his lust for her. He stared at her, cornered her and tried to talk to her.

95. On multiple occasions, Manager Martinez would approach Plaintiff from behind and try to

give her a "massage," but she always turned and walked quickly away so that he would not touch her.

96. Plaintiff tried desperately to stay as far away from Manager Martinez as she could, but because he was her manager, she had no choice but to interact with him.

97. Plaintiff again suffered extreme anxiety and depression because her work and life had again become utterly intolerable and she knew that she could not rely on Defendant, who had rehired her tormentor-to protect her.

### Manager Martinez Denies Plaintiff Lunch Breaks, Reduces Plaintiff's Hours and Refuses to Pay Her Overtime Hours

98. After Plaintiff again continued to deny Manager Martinez's sexual advances following his return to Defendant The Manhattan Institute, Manager Martinez again began retaliating against Plaintiff as well.

99. When Plaintiff told Manager Martinez that she was going to take her lunch break, he yelled at her that she could not go to lunch and ordered her back to work.

100. When Manager Martinez saw Plaintiff sit down at any point in the day, he screamed at her to "get back to work."

101. Upon information and belief, Defendants permitted similarly situated employees to take lunch breaks and to sit down during their shifts, but Manager Martinez refused to allow Plaintiff to do so in retaliation for her objection to his sexual advances.

102. In or about Spring of 2016, in order to make more money to support her family, Plaintiff began working additional shifts at night. When Plaintiff received her paycheck, she was shocked to see that Manager Martinez had not submitted Plaintiff's overtime pay, causing her to lose her rightful pay.

103. Plaintiff knew that she needed additional hours in order to support her family and so she was forced to begin working on Saturdays instead.

104. A few weeks later, however, Manager Martinez smugly told her that she could no longer have Saturday hours because he had decided to give them to a different employee.

105. Manager Martinez routinely scheduled other employees for weekend shifts but refused to allow Plaintiff to work.

106. In addition, in December 2016, Manager Martinez and Kenny ordered Plaintiff to work overtime from 6:00 am to 12:00 am midnight two days in a row for Defendant. Plaintiff was thrilled, because she felt that Manager Martinez had been unfairly denying her overtime opportunities.

107. When Charging Party received her paycheck, however, she saw that Defendants had not paid her for the overtime work. When Plaintiff went to Manager Martinez to try to get him to "fix the pay mistake, he smiled suspiciously, and said that he would "look into it." Plaintiff never received her overtime pay for these hours.

108. Upon information and belief, she was denied overtime pay in retaliation for her objection to Manager Martinez's sexual advances and for previously reporting his sexual harassment.

### Plaintiff is Terminated After She Obtains Counsel and Reports the Sexual Harassment and Discrimination

109. In or about August 2017, Plaintiff sought counsel from her family and friends, and they convinced her that she had to find a lawyer. She hoped that the fact that she had retained counsel would encourage Defendant Manhattan Institute to protect her-and themselves-by ensuring a sexual harassment free environment.

110. Plaintiff worked up the courage to call various help groups and was referred to the undersigned, Megan Goddard (hereinafter "Ms. Goddard"), of Goddard Law PLLC.

111. After retaining Ms. Goddard to represent her, Goddard Law sent a "representation letter" to Defendants on September 18, 2017, informing them that Plaintiff alleged that she had been subject to sexual harassment and a hostile work environment while employed at Defendants.

112. Shockingly, days later, also in and about September 2017, Plaintiff arrived at work to punch in, and Manager Kenny called her into his office.

113. Manager Kenny furiously threw her pay check at her and said that she was "not needed anymore" and to "get out of this office."

114. Upon information and belief, Defendants terminated Plaintiff's employment in retaliation for reporting and objecting to sexual harassment and a hostile work environment.

### Defendants Lies to the Department of Labor in Contesting Plaintiff's Unemployment Insurance Application

115. Thereafter, Plaintiff applied for unemployment insurance. Defendants, who had already terminated her unlawfully, lied to the unemployment board by saying that she was not a legal resident of New York State, but an illegal immigrant. After Plaintiff went through the arduous task of proving to the New York State Unemployment Office that she was a legal permanent resident, she was awarded unemployment.

116. Upon information and belief, having worked with Plaintiff for many years, Defendants knew that Plaintiff was a legal permanent resident, and lied to the New York State Unemployment Office in order to further retaliate against her for objecting to sexual harassment.

117. Plaintiff requests a jury trial.

### CLAIMS

### AS AND FOR THE FIRST CAUSE OF ACTION
(Gender Discrimination in Violation of Title VII against Defendant the Manhattan Institute, and in violation of the NY Executive Law, and the New York City Administrative Code against all Defendants)

118. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

119. Defendant The Manhattan Institute discriminated against Plaintiff in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), and all Defendants discriminated against Plaintiff in violation of Section 296, subdivision 1(a) of the New York Executive Law, and Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting her to different treatment on the basis of her gender. Plaintiff has suffered both disparate impact and disparate treatment as a result of Defendants' wrongful conduct.

120. Defendant the Manhattan Institute discriminated against Plaintiff on the basis of her sex in violation of Title VII, and all Defendants discriminated against Plaintiff on the basis of her sex in violation of the New York Executive Law, and the New York City Administrative Code.

121. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

15

122. By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of Title VII, the New York Executive Law, and the New York City Administrative Code, and including an award of punitive damages. In addition, attorneys' fees should be awarded.

### AS AND FOR THE SECOND CAUSE OF ACTION
**(Retaliation in Violation of Title VII, NY Executive Law, and the New York City Administrative Code)**

123. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

124. Plaintiff objected to Defendant about Defendants' discriminatory treatment of her.

125. In retaliation, Defendant subjected Plaintiff to a series of adverse employment actions including, but not limited to, termination of Plaintiff's employment and knowingly pursuing a meritless challenge to Plaintiff's entitlement to unemployment insurance benefits.

126. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling her to punitive damages.

127. As a result of Defendants' conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

128. By reason of Defendants' retaliation, Plaintiff is entitled to all remedies available for violations of Title VII, the New York Executive Law, and the New York City Administrative Code, and including an award of punitive damages and attorneys' fees.

### THIRD CAUSE OF ACTION
**(Interference with Plaintiffs rights under the FMLA)**

129. Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

130. Defendants willfully interfered with Plaintiff's rights in violation of the FMLA.

131. Defendants are "employers" within the meaning of the FMLA

132. By of reason of Defendant's violation of the FMLA, Plaintiff is entitled to all remedies available for violations of the FMLA, including an award of punitive damages. In addition, attorneys' fees

should be awarded.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment as follows:

(i) On the First Cause of Action, awarding Plaintiff compensatory and other damages including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000;

(ii) On the Second Cause of Action, awarding Plaintiff compensatory damages and other damages including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000; and

(iii) On the Third Cause of Action, awarding Plaintiff compensatory damages and other damages including punitive damages in an amount to be determined at trial but in any case, no less than $1,000,000; and

(iv) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this court deems equitable, proper, and just.

Dated: New York, New York\
       March 6, 2019

                                              Respectfully submitted,

                                              GODDARD LAW PLLC
*Attorney for Plaintiff*

                                              By:_____/s/_____
                                                  Megan S. Goddard, Esq.
                                             39 Broadway, Suite 1540
                                           New York, NY 10006
                                           Ofc: 646-504-8363
                                           Fax: 212-473-8705
                                           Megan@goddardlawnyc.com